### VELIE MINES CORP. et al. v. ROGERS et al.

No. 22153.   Opinion Filed July 7, 1931.

J. Fred Swanson, Ray McNaughton, and Arthur G. Croninger, for petitioner.

Commons & Chandler, for respondents.

CULLISON, J. This is an original action filed in this court by petitioners, Velie Mines Corporation, and United States Fidelity & Guaranty Company, to review an award of the State Industrial Commission made and entered on the 9th day of January, 1931, which award found that respondent H. R. Rogers was temporarily totally disabled for ten days in January, 1930, and had been so disabled since May

26, 1930, and that claimant was in need of further medical attention. Petitioners were ordered to pay to the claimant the sum of $456, as compensation in full to November 12, 1930, and continue the payment of compensation from November 12, 1930, until the termination of disability or until otherwise ordered by the Commission, and also tender claimant medical treatment for said aforementioned injury.

The record in this case discloses that respondent was working for Velie Mines Corporation as a "ruffer man," or "ruffer jig," his duties being to "toggle" a crusher, helping put it to the "jaw bumper"; that while so employed he sustained an accidental personal injury to his back by reason of his foot slipping on the crusher base as he held suspended the 60-pound toggle, in an effort to "seat" the same; that petitioner was conducting a mining business; that the injury occurred January 4, 1930, during work hours, upon the premises of the mining company where respondent worked.

Respondent filed employee's first notice of injury and claim for compensation on August 7, 1930. Petitioners answered, denying that claimant was injured by accident arising out of and in the course of his employment on January 4, 1930, denying that the disability complained of was a result of an accidental injury for which they would be liable to claimant for compensation; and denying that claimant gave proper notice of alleged injury within reasonable time; and therefore their rights have been prejudiced.

Legal notice of hearing to determine liability and extent of disability was given all parties in interest, and, pursuant thereto, all parties appeared November 12, 1930, before Commissioner F. L. Roblin at Miami, Okla., and a trial was had. From the order and award entered thereon January 9, 1931, petitioners appeal to this court and seek reversal thereof on one assignment of error, to wit:

"Claimant failed to give notice of his alleged injury as required by section 7292, C. O. S. 1921, which failure was not excused by the Industrial Commission."

Section 7292, C. O. S. 1921, provides:

"Notice—Requirements: Notice of an injury for which compensation is payable under this act shall be given to the Commission and to the employer within 30 days after injury. Such notice may be given by any person claiming to be entitled to compensation, or by someone in his behalf. The notice shall be in writing and contain the name and address of the employee, and state in ordinary language the time, place, nature, and cause of the injury, and be signed by him or by a person on his behalf. It shall be given to the Commission by sending it by mail by registered letter, addressed to the Commission at its office. It shall be given to the employer by delivering it to him or sending it by mail, by registered letter, addressed to the employer at his or its last known place of residence; provided, that, if the employer be a partnership, then such notice may be given to any one of the partners, and if the employer be a corporation, then such notice may be given to any agent or officer thereof upon whom legal process may be served, or any agent in charge of the business in the place where the injury occurred. The failure to give such notice, unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this act."

An examination of the testimony adduced at said hearing will show whether or not the facts in this case square with the law of notice, supra. Claimant, H. R. Rogers, testified (Tr. 4):

"Q. Who was there? A. Carl James was assisting me. Q. Who else was around there? A. Louis Haynes. He is deceased now. He was the crush feeder, and Tom Nix was the other man. Q. Where was he when it happened? A. Upon the crush feeder's platform, just in front of me. Q. How far from you? A Ten or twelve feet. Q. Now, what position did you say he occupied? A. Foreman. Q. Was he your boss? A. He was the mill superintendent. Q. At that time did you have a discussion with him relative to this matter? A. No. When I got straightened up, I said, 'Boys, I hurt my back.' Q. Did you have a discussion with him later? A. Yes. Q. Who were you talking to? A. The foreman. Q. Go ahead and tell what you said? A. He said, 'Harry, how is your back?' and I said, 'It hurts me, and has been hurting me since I got hurt on the crusher.' It went on a few days, and I kept complaining about my back, and he said, 'Well, maybe it's the rheumatism,' and I decided to get some patent medicine and treat it, and I thought maybe the rheumatism had settled there where I got the strain in my back, and there was a possibility that medicine might do it some good, and I got some Conjola to take it, but without any effect. It run on for ten days and it got worse, and my back hurt so bad I went home and went to bed. * * * It got to hurting me pretty bad again, and I went home and went to bed, and I decided I was going to get some help, so I went to the American Hospital to Dr. Butler. Q. What

kind of treatment did Dr. Butler give you? A. He didn't treat me. Went in and said, 'Say my back is hurting me, and I don't know what's the cause of it, or whether it is rheumatism or what.' He said, 'Where do you hurt?' and I told him in the small of my back, and he strapped me up with adhesive from the small of my back to the ribs.''

Claimant further stated that, after quitting work on May 25, 1930, his condition has been such that he has been disabled ever since, and upon cross-examination, testified (Tr. 13):

"Q. As a matter of fact, you have not had much of an idea as to what is wrong with you? A. Not until recently. Q. Then you decided it was due to the time you strained your back on or about January 4? A. Yes; I couldn't say for sure just whether it was the 3rd or 4th. * * * (Tr. 31) Q. After January 4th, and prior to the present date, you filed your claim with the Metropolitan Insurance Company for disability? A. Yes, sir. Q. And you have been receiving benefits from the Metropolitan Insurance Company? A. Yes; I was being treated for rheumatism, I thought, until I got the X-ray. Q. You did turn in a claim for rheumatism with the Metropolitan? A. Yes, sir.''

Dr. V. V. Butler testified that claimant came to him March 14th for the first time subsequent to January 4th, and that claimant's trouble was diagnosed by him as lumbago, and that a history of claimant's case was taken at that time, and insurance blank made out for Rogers so that he would get his sick and accident insurance. Dr. Butler testified, verbatim:

"Q. Do you know to whom you made this (Tr. 34, ff) A. I don't know, but it seems to me it was the Metropolitan. Q. (Tr. 37) At any time subsequent to January 4, did you obtain a history of an accidental injury from Mr. Rogers? A. No, sir, no injury was mentioned. Q. Did he come to you as a private case? A. Yes.''

T. M. Nix testified that he was mill superintendent of the Velie Mining Company on January 4, 1930; that claimant was in his employ at that time; that the witness at the time of giving his testimony was not in the employ of the Velie Mining Company, but was in business for himself, and then continues (Tr. 41):

"Q. On or about January 4, or subsequent to January 4, while Mr. Rogers was under your supervision, did you have a conversation with him relative to an injury received on or about January 4, 1930? A. Not at that time, no, sir. Q. Mr. Nix, when did you first have any conversation with Mr. Rogers? A. Well I don't know. It was along, I would say, in the midsummer sometime, when I first knew that he said he got hurt. Q. Did you discuss it with him at that time? A. Yes, we talked about it. Q. And that was midsummer? A. Yes. Q. 1930? A. Yes, if I remember right. I think it was last summer. Q. (Tr. 34) Did you have any knowledge of an alleged accidental injury occurring to Harry Rogers, the claimant, prior to the middle of the summer, 1930? A. No, sir. Q. You were his immediate foreman? A. Yes, sir. Q. (On cross-examination:) Was there a man by the name of James working out there with this boy in January of this year? A. Yes. Q. Do you recall an occasion when they were lifting a toddle out there and learned about this boy straining his back? A. I don't remember it, but we do lots of that kind of work. Q. Do you recall an occasion when on January 4, or at any time during the month of January, when he was lifting a toddle under your supervision, that he complained of having received a back injury? A. Not an injury. Mr. Rogers complained quite a bit of having back trouble, but he thought at that time it was rheumatism. Q. He didn't complain of rheumatism before January? A. I don't remember. Q. Do you recall asking him on any occasion after the 4th of January about how his back was getting along, and you and he discussed as to whether it was due to rheumatism, or if it was due to the lifting of the toddle? A. We talked about his back many times, but it was along in the summer when I knew he said he hurt his back. Q. Did you have a discussion with him in which it was disclosed between you and the claimant, Mr. Rogers, that he couldn't tell whether it was from the injury that he received or due to rheumatism? A. No. Q. Did you ever advise him to see a doctor? A. No, not until midsummer. Q. You did advise him in midsummer to see a doctor? A. Yes, he was referred to the office, and he was not working for me. Q. (Upon re-direct examination): Your first knowledge that he was claiming an injury was in midsummer? A. If I remember right.''

The record shows that the respondent H. R. Rogers claims injury of January 4, 1930, that he quit working for petitioner herein May 25th, and did not give notice of his injury until August 7, 1930. His statement to his Doctor Butler that he did not know whether the cause of his discomfort was "rheumatism or what," together with his own admitted opinion that he did not know what was the cause of his trouble, his conversations with his foreman and his claim to the Metropolitan Insurance Company for disability benefits on account of rheumatism, indicate that rheumatism was the cause of his disability. The testimony shows that no notice of accidental back injury was ever given petitioners by this respondent until over sev-

en months after the alleged accident, and some 2½ months after respondent had quit the employment of petitioner Velie Mining Company. The respondent wholly failed to sustain the affirmative burden upon him to show that such notice could not have been given, or that his employer was not prejudiced thereby. The award of the Commission makes no finding of fact excusing such failure to give notice, and the testimony shows, without doubt, that petitioners were prejudiced by failure to receive said notice within the statutory time required. It appears that under section 7292, supra, the claim of respondent Rogers herein is thereby barred.

It is essential that an employer must have notice of the injury of a claimant within 30 days, and such requirement ought not to be treated as a mere formality, or be dispensed with as a matter of course whenever there has been a failure to serve such notice. From the fact that the Legislature has required such notice to be given, the presumption naturally arises that the opportunity for prompt investigation of an alleged injury is one of value. It would be a peculiar rule that would permit a claimant to wait months until the means of information were closed, then come in with his own case, and claim that the employer is not prejudiced because of not having received the required notice, and had an opportunity to make investigation at or near the time of the injury.

The facts in this case are similar to those in Ford Motor Co. v. Hunt, 146 Okla. 105, 293 Pac. 1038, decided by this court November 25, 1930, and we follow the holding in said case.

Under the facts in this case, and the authority cited herein, we are of the opinion and hold that there is no competent testimony reasonably supporting the finding of the Commission that claimant is entitled to the award given, and the Commission's order of January 9, 1931, awarding respondent compensation, is hereby reversed, and the cause remanded to the State Industrial Commission, with directions to dismiss the respondent's claim for compensation.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents.