## PIONEER GAS UTILITIES CO. et al. v. HOWARD.

No. 22694. Opinion Filed Jan. 26, 1932.

Roy V. Lewis and Miley, Hoffman, Williams & France, for petitioners.

A. H. Meyer, for respondents.

SWINDALL, J. On April 3, 1931, Frank Howard, as claimant, filed before the State Industrial Commission employee's first notice of injury and claim for compensation, against Pioneer Gas Utilities Company, respondent, and Globe Indemnity Company, insurance carrier, in which he alleges that between January 20 and 30, 1931, he sustained an accidental personal injury arising out of and in the course of his employment as a common laborer employed by the Pioneer Gas Utilities Company at Oklahoma City, Okla., caused by carbide blowing in his left eye. The claimant filed a motion

to have said claim set down for hearing in which he alleges, among other things, that on the 3rd day of February, 1921, evidently meaning 1931, while in the regular course of his employment as an employee of the Pioneer Gas Utilities Company, he was injured in the following manner:

"While he was using his hands as a funnel helping to fill a carbide lamp, the wind blew carbide into his eye, causing great pain and suffering, and burning the eye"

—and that as a result claimant's sight has been seriously impaired and that there is great danger of his going blind in the left eye which would make him totally blind, as claimant when he went to work for above respondent had already lost the sight of his right eye, which was brought to the attention of the respondent and they had full knowledge of his condition at time of their employment of claimant. Upon this motion being filed the claim was set for hearing before the State Industrial Commission at its office in the Capitol Building on May 29, 1931. The respondent and insurance carrier filed their answer in which they denied that claimant received an accidental personal injury arising out of and in the course of his employment, and when the cause was called for hearing before the Commission on May 29, 1931, the respondent and insurance carrier objected to the introduction of any testimony on the part of the claimant for the reason that due notice was not given the employer and insurance carrier within 30 days next after the date the alleged accidental injury was alleged to have occurred, and that no claim for compensation was filed or notice given until April 3, 1931, and for the further reason that such delayed notice has prejudiced the rights of this respondent and insurance carrier. Its objection was overruled and exceptions allowed and evidence taken on different dates prior to the 8th day of July, 1931, and on that date the State Industrial Commission made and entered its findings and order for compensation in which it found:

"(1) That, on and prior to January 30, 1931, claimant was in the employ of respondent and engaged in a hazardous occupation as the same is defined by the Workmen's Compensation Law of the state of Oklahoma, and on said date sustained an accidental personal injury arising out of and in the course of his employment, resulting in a partial loss of vision in the left eye.

"(2) That the average daily wage of claimant at the date of said accident was $4 per day.

"(3) That claimant was temporarily to-

tally disabled from January 30, 1931, to June 12, 1931, the date of the hearing, less the statutory five days' waiting period.

"(4) That claimant, previous to said accident, had sustained the complete loss of use of his right eye, and that as a result of said injury, claimant sustained a 25 per cent. loss of vision in his left eye, which is a partial permanent loss."

Within the time allowed by law the respondent and insurance carrier commenced this proceeding to review said findings and award, and assigned several errors which they urge for a reversal of the award. The first one argued in their brief is that:

"Claimant failed to give the statutory notice of the alleged injury to the prejudice of your petitioners and the award is therefore contrary to law."

It was admitted by claimant that he did not give written notice to the Pioneer Gas Utilities Company of the injury as required by section 7292, C. O. S. 1921. His excuse for not doing so was that he needed the work and did not want to lay off. It is claimed, however, by claimant that his failure to give his employer and the insurance carrier the written notice should be excused for the reason that another workman by the name of Earl Veach (Veitch), the generator man, orally notified Mr. Gibson, the foreman on the job, that carbide blew in the eye of the claimant. Mr. Veach upon the trial testified that on two occasions he advised Mr. Gibson that carbide blew in the eye of claimant. Mr. Gibson testified as a witness at the trial that Veach did not give him any such notice and that he did not have any notice or knowledge of the accident and Mr. Gleason, manager of the Pioneer Gas Utilities Company, with offices in Oklahoma City, testified that he did not have any notice or knowledge of the accident until about the 3rd day of April, 1931. Dr. G. O. Hall testified that he treated the claimant from the 3rd day of April until the 27th day of April. He testified that the claimant gave him a history that:

"While working for the Pioneer Gas Utilities Company on or about the 25th of January, 1931, claimant was filling an acetyline tank for a welding machine and got some of the carbide in his eye, that he reported the matter, and with no treatment previous, at that time he didn't think it amounted to much, but he said his eye kept getting worse when he came to me and had quite an inflammation of the conjunctiva, the membrane lining the eye. I noticed one of his eyes already had been removed, he was wearing an artificial eye, and also had a pterygium—had little tumor made up by the fold

of the conjunctiva inner membrane, that cover the eyeball; and is produced by irritation, it kept growing from the inner side of the eye. up towards the cornea, towards the pupilary, there was quite a little lacrimal, the eye was watering some, minute scar formation in the eye. I treated him up to the 27th of April, there was considerable of this inflammatory had been removed, his eye was in a better condition; the pterygiums can only be removed by a surgical operation and I advised the Globe Indemnity Company—corporation, I understood carried the insurance on the case, and advised them, and received a letter in which they denied any liability for the claim, and decided not to have anything to do with having the man treated."

Dr. Hall further testified that:

"Pterygiums is caused by any irritating substance, due to dust and wind, pterygium is one of the commonest ailments of the eye, for instance a Texas cowboy, exposed to the wind, developes pterygiums."

He also testified that calcium carbide in the eye would produce pterygiums. Dr. Hall further testified:

"I don't think it is possible to form an accurate estimation, the loss of vision, unless you carry on your treatment to the limit; however, as the case stands now, he has probably 25 or 30 per cent. loss of this eye."

He further testified that he thought an operation would correct the defects and reduce the loss of vision to 10 or 15 per cent. Dr. Hall further testified that if the claimant had gone to a doctor immediately following the accident, in his opinion there would have been less loss of vision. Dr. Hall was a witness on behalf of claimant. Dr. Theodore G. Wails, a specialist in diseases of the eye, ear, nose, and throat, testified that:

"Claimant stated on or about February 3rd, 1931, while at work filling a generator with carbide some of it blew into his left eye, he said he didn't notify any doctor, and quit work the next day, and has not worked since that time, the chief complaints, when I saw him, he could not see good close up, his vision impaired, for close, his right eye having been lost some eleven or twelve years previous. An examination show no scars on the front of the eye, as would be left from a burn, if he had been burned by carbide, and the eye was not reddened up nor inflamed, the lids were not affected, there was no evidence of any infection of the conjunctiva, the cornea, lens, media and optical nerve clear and normal, his vision with the Snellen test chart 20-20, less only one let-

ter, on the normal line, that the catch letter put in there for that purpose, and with the proper lens for reading, which his age calls for, he could read the finest print at the normal distance, 14 inches, he had a little thickening of the conjunctiva at the inner side of the eye, if it were to get larger thereafter, call a pteryguim, that is due to outdoor life, due to the sun and sand, exposure to the elements, it is very common and occurs in a large number of people whose business keeps them outside, it does not impair the vision unless become enough to carry it across the eye and obstruct the pupil; that does not do that in this man's case, it is not large enough to warrant surgical, we don't recommend that be removed unless they are large enough to show some indication that they might impair their vision, my opinion there is no impairment of any sort of this man's eye, his vision is normal, distance, he reads the finest print at the normal distance, which means all he needs is glasses, because he is 46, and that is not due to the injury."

Dr. Todd, a specialist, testified that when be examined the claimant on June 2, 1931, claimant claimed his left eye was burned by carbide February 4, 1931, while working for the Pioneer Gas Utilities Company of Oklahoma City. He remained at work during that time and complained that his eye kept getting worse and that he went to a doctor on the 3rd of April, 1931. The chief complaint now is that he is bothered with his near vision. He had difficulty in seeing how to read and work close to him.

"Examination revealed that the nose, mouth and throat were negative as far as any complaint the patient was making. Eyes: Right eye is gone, he has had an artificial eye since 12 or 13 years ago, his right eye was injured in a fight and had it removed less than 24 hours after he was injured. Had no trouble with the other eye up to the time he got the carbide in his left eye. Examination of the left eye revealed a vision of 20/50 Snellen, Attention normal, pupil reacted to light but did not react to accommodation as you would expect from a man 46 years of age for near objects. There are no scars on the cornea or opacities in the media. Chief complaint was that he does not see well near-to. I could find no scars in the cornea nor evidence of injury to the conjunctiva globe of the eye or the lids. The media was clear so that I could see the fundus of the eye perfectly. Fundus Examination: The main examination of the retina and the nerve showed a definite pigmented area in the retina about four m.m. on the temporal side of the optic disk; that is the optic nerve head. This pigmented area is sausage shape and three m.m long and one-half m.m wide. It runs not through but very close to macula latuia, it is the

scene spotted the eye. A. large per cent. of the vision of the eye is in the macula latuia, about as big as the head of a pin. What this really means is that the man is not able to see definitely, whether it is the result of injury or previous disease."

Dr. Todd also testified that a sufficient quantity of carbide in the eye would destroy the sight, and further testified that if the claimant neglected having his eye treated that it was likely to cause more loss of vision, that he did not think that there was any medical treatment that could change the condition at the present time, and that the present loss of vision was permanent. Dr. Westfall, an eye specialist, testified that:

"This man came to me June 2, 1931. He stated to me that on February 4, 1931 that he was filling a carbide generator with carbide and using his hands for a funnel. While doing this, some of the carbide was blown in his left eye. Said the left eye was treated by Dr. Hall, starting about the 3rd of April. States that he had had no trouble until that time. Also states he did not report injury of left eye though it had bothered him. Present Complaint: States that he has sharp pain and that the eye waters and he does not see well. Says that he improved some under treatment, but that his eye is worse now since treatment was stopped. Examination: The conjunctiva lining lids of left eye is very slightly infected but smooth. There is a very small pterygium slightly impending on cornea on nasal and temporal side. Cornea and media clear. Fundus examination shows a partial arc of pigment on temporal side of disc involving perhaps one-fourth of disc circumference. Do not find any evidence of recent or old retinitis. Vision obtained of left eye is 20/40 (reads one-half of the letters in this line, which is approximately 18½ per cent. loss of vision). Patient stated in the history that his right eye had been knocked out in a fight 12 or 13 years ago. Conclusions: Am unable to account for any loss of vision of left eye as result of injury. Had the loss of vision been the result of the injury in question, there would of necessity be some scarring or haziness of the cornea present to account for this. None was found."

It will be noted from the evidence found in the record that there is a direct conflict between the testimony of Mr. Veach, the generator man, and Mr. Gibson, the foreman, relative to Veach informing Mr. Gibson of the alleged accidental injury. The evidence of the claimant's own physician is that claimant should have received medical attention promptly and if his eye had been so treated there would have been less loss

of vision, and the testimony of Dr. Hall is that if an operation had been made at the time he suggested one should have been made, about April 27, 1931, that it would have reduced the permanent injury 10 or 15 per cent., so, it appears to us that under this state of the record it was essential that the Commission make a finding upon the evidence relative to the failure of the claimant to give the statutory notice. If we had here for consideration a case where there was a conflict in the evidence relative to the issue as to the claimant being employed by the respondent or whether or not there had been a change in conditions and the evidence was in conflict, or as to whether or not the injury arose out of and in the course of employment, and the Commission failed to make a finding upon an essential issue of fact, we would be forced to set aside the award and remand the cause to the Commission to make a proper finding. It is just as essential under section 7292, C. O. S. 1921, that written notice be given to the employer or the insurance carrier or that the same be excused by the Commission as it is that they pass upon the other facts above indicated. This is not a new question for consideration by this court. We held in Unity Drilling Co. v. Bentley, 77 Okla. 76, 186 P. 239, that the failure to give notice was excused by the Commission, and that we were unable to find any error in that action. In the case of Graver Corporation v. Industrial Commission, 114 Okla. 141, 244 P. 438, we held that:

"Where it appears that no written notice of injury was given by the employee as required by section 7292, Comp. Okla. Stat. 1921, but the employer had actual notice of such injury immediately after it occurred, held, such failure to give the statutory notice is not a bar to the claimant in the absence of proof by the employer that he was prejudiced thereby, notwithstanding such actual notice."

In Oklahoma Gas & Electric Co. v. Thomas, 115 Okla. 67, 241 P. 820, we held that:

"In an action to enforce compensation for an injury to an employee under the Workmen's Compensation Act, where it appears that no written notice of the injury was given as required by section 7292, C. S. 1921, a want of prejudice to the employer by reason of a failure to give the written notice sufficiently appears where it is shown that the employer had actual notice of such injury, soon after it occurred and, with full knowledge of the injury, omitted to administer any relief; and where the employee makes proof of such actual notice of his injury, the burden of proof then shifts to the employer

to show that in spite of such actual notice he is still prejudiced by the failure to give the written notice."

This rule has been followed and applied in the cases of Olsen Drilling Co. v. Tryon, 150 Okla. 18, 300 P. 663; Fidelity Union Casualty Co. v. State Industrial Commission, 130 Okla. 65, 265 P. 131; Beck Mining & Royalty Co. v. Seay, 144 Okla. 155, 289 P. 1103. In Ford Motor Co. v. Hunt, 146 Okla. 103, 293 P. 1038, we held that:

"Under section 7292, C. O. S. 1921, providing that notice of an injury for which compensation is payable under the Workmen's Compensation Act of Oklahoma shall be given to the employer within 30 days after injury, failure of the employee to give such notice will bar a claim for compensation under the act, unless the employee shall excuse such failure by affirmative proof that such notice could not have been given or that his employer was not prejudiced thereby."

The rule announced in the Hunt Case was followed in Velie Mines Corporation v. Rogers, 150 Okla. 185, 1 P. (2d) 353. Some inapt language crept into some of the decisions cited where we said that, "the burden of proof shifts to the employer." The burden of proof in an action never shifts from one party to another, but the burden of proof is by law placed upon one litigant and when he offers proof to sustain the issue, then the procedure, not the burden of proof, shifts to the other party to offer proof upon that issue and it is then for the Industrial Commission, in cases coming within its jurisdiction, to weigh the evidence and make a finding and determination of the facts, and where it fails to do so the cause will be reversed and remanded to it to perform that duty.

It is next contended that there is no competent evidence sustaining the finding of the Commission "that claimant was temporarily totally disabled from January 30 to June 12, 1931, the date of the hearing, less the statutory five days waiting period." We think this contention is well taken. There is no evidence that the claimant sustained an injury to his left eye prior to February 4, 1931, and there is no competent evidence that he had any temporary total disability. Claimant worked the 5th and a part of the 6th day of February, 1931, at which time he was laid off for economic reasons. He endeavored to secure employment thereafter and worked eight days for Oklahoma City, and failed to secure other work because, as stated by claimant, "No work to do, plenty of men."

The claimant contends that his failure to give notice in writing is governed by the rule of law announced by this court in the case of Olsen Drilling Co. v. Tryon, 150 Okla. 18, 300 P. 663. A careful examination of the Olsen Drilling Company Case will disclose that the claimant is mistaken in this contention. In that case the Commission found that the employer had actual notice of the injury and excused the failure of the claimant to give notice in writing. In the case at bar the Commission did not excuse the failure to give notice. It failed to pass upon that issue. So, we hold that in cases where notice is not given, the failure to give notice of an injury for which compensation is payable under the Workmen's Compensation Law may be excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier, or employer, as the case may be, has not been prejudiced thereby, and when it appears that written notice has not been given as required by section 7292, C. O. S. 1921, the burden rests upon claimant to prove by competent evidence that for some sufficient reason notice could not have been given or that the insurance carrier, or employer, as the case may be, has not been prejudiced thereby, and where the failure to give written notice of an injury is made an issue in a proceeding for compensation under the Workmen's Compensation Law, it is the duty of the State Industrial Commission to hear the evidence offered by the parties and make a finding in accordance with the facts excusing the failure to give said notice in writing upon one or both of the grounds authorized by section 7292, C. O. S. 1921, or refusing to excuse such failure as the facts may warrant, and where the failure to give notice of injury is made an issue in a proceeding for compensation under the Workmen's Compensation Law and the employee offers proof that the employer had actual notice of the time, place, nature and cause of the injury, and seeks to excuse failure to give written notice upon that ground and the employer denies actual notice and offers proof that it did not have such actual notice of the injury, the State Industrial Commission must make a finding upon that issue, and where the record shows such issue was presented to the Commission and it failed to make a finding of fact upon the same, this court will vacate the award and remand the cause to the Commission for a proper finding in accordance with the facts.

Record in this case examined, and found that the State Industrial Commission has not excused the failure to give notice in writ-

ing. Held, that until such failure was excused by the Commission it was without jurisdiction to make any award for compensation. Also held, that there was no competent evidence showing a temporary total disability, and that compensation cannot be awarded for permanent partial disability unless and until the Commission, upon some competent evidence has excused the failure of employee to give notice in writing under section 7292, C. O. S. 1921. For the reasons herein stated, the award is vacated and this cause remanded to the State Industrial Commission to proceed consistently with the views herein expressed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., absent.