Merrimack, }
Feb. 1, 1921. }

### MILLEGE LAIRD v. BOSTON & MAINE RAILROAD.

No record of an adjudication is evidence of the facts on which it is founded in a suit between persons who are strangers to the adjudication.

Upon the question of the extent of an injury to the plaintiff's eye, evidence of a draft examiner was admitted to show that the plaintiff would probably not be accepted for service because of such injury. Evidence of the defendant that the plaintiff successfully passed an examination of the board of draft examiners and was accepted for service is inadmissible.

If evidence improperly admitted against the plaintiff's exception is prejudicial both on the question of liability and on the question of damages, a verdict for the defendant will be set aside.

ACTION, for personal injury brought under the employers' liability act, Laws 1911, *c.* 163, *ss.* 1, 2. Trial by jury and verdict for the

defendants. Exceptions taken by the plaintiff to the introduction of evidence are stated in the opinion. Transferred from the April term, 1920, of the superior court by *Branch*, J.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. William N. Rogers* orally), for the defendants.

PLUMMER, J. The plaintiff was employed by the defendants as a rivet heater, and his work required him to heat and carry rivets to the riveters. The rivets occasionally, before use, became too cold for riveting, in which case they were returned to the forge, and reheated. Upon the occasion of the accident, November 3, 1913, a fellow employee returned a rivet to the forge by throwing it. This rivet hit the plaintiff in the right eye, causing the injuries complained of. It is the claim of the plaintiff, substantiated by his evidence, that his eye was seriously injured by the accident, and that his sight was very badly impaired; on the other hand the defendants contend, and their evidence tended to prove, that the plaintiff's sight was not seriously affected. The defendants were permitted, subject to exception, to show by a draft examiner in the late war, that he would not expect the plaintiff to be accepted for service by reason of his badly impaired vision. The defendants were then allowed, subject to exception, to introduce evidence that the plaintiff successfully passed the examination of the board of draft examiners, and was accepted for service in the war. The effect of this testimony was to place before the jury the finding of the board of draft examiners, and to show that he had not suffered any such serious impairment of vision as his evidence indicated. In other words, it tended strongly to impeach the plaintiff's evidence, and to destroy the credibility of the plaintiff, as a witness, not only upon the question of damages, but also upon the issue of liability. And, if the testimony was improperly admitted, the verdict should be set aside.

The finding of the board of draft examiners was not binding upon the plaintiff, except for the purpose for which it was made, and therefore evidence of it should not have been admitted. The examination of the plaintiff by the board was an *ex parte* proceeding, so far as he was concerned. He was summoned and compelled to appear, and submit to the examination. But no hearing, in which he had any

part, preceded their finding as to his physical condition. He had no opportunity to cross-examine the board to discover how they reached their conclusions, or to take any action in his own behalf. "It is a well established general rule that a litigant cannot be affected by the words or acts of others with whom he is in no way connected, and for whose sayings or doings he is not legally responsible." 22 C. J. 741. The findings of the board of draft examiners cannot stand any better as evidence against the plaintiff in this case, than a judgment of a court, which is not evidence against one who is not a party or privy to it. *Warren* v. *Cochran,* 27 N. H. 339.

The following statement of *Richardson,* C. J., in *Lawrence* v. *Haynes,* 5 N. H. 33, is applicable to the present case: "It did not appear that either of these parties was in any way a party to those proceedings. The whole must therefore be considered, with respect to this plaintiff and defendant, as *res inter alios acta;* and we consider it as settled, that no record of an adjudication can be used as evidence of the facts upon which it is founded, in a suit between persons who are strangers to the adjudication."

In *Burrill* v. *West,* 2 N. H. 190, it was said: "Neither a verdict nor a judgment can, in general, be evidence for either party in an action against one, who was a stranger to the former proceeding, who had no opportunity to examine witnesses or defend himself." "It is an axiom of the law, that no man shall be affected by proceedings to which he is a stranger— to which, if he is a party, he must be bound. He must have been directly interested in the subject-matter of the proceedings— with the right to make defense, to adduce testimony, to cross-examine the witnesses on the opposite side, to control, in some degree, the proceedings, and to appeal from the judgment. Persons not having these rights are regarded as strangers to the cause." 10 R. C. L. 1117, and cases there cited.

The valuation of property by municipal officials for the purpose of taxation cannot be introduced, as evidence of the actual value of the property, in controversies between persons not claiming rights under the tax assessment. *Concord Land &c. Co.* v. *Clough,* 69 N. H. 609; *Stevens* v. *Fellows,* 70 N. H. 148; *Flint* v. *Flint,* 6 Allen, 34; *Kenerson* v. *Henry,* 101 Mass. 152; *Anthony* v. *Railroad,* 162 Mass. 60; *Martin* v. *Railroad,* 62 Conn. 331.

In *Concord Land &c. Co. v. Clough, supra,* the court said: "The appraisal for taxation not being made by the owner or at his instance, and almost always in his absence and without his being heard, he is not bound by it except for the purposes for which it was made." The

proceedings of a board of assessors in finding the valuation of property
for tax assessment are analogous to those of a board of draft examiners
in determining the physical qualifications of a drafted man, so far, at
least, as the rights and privileges of the parties affected by the deci-
sion of these boards are concerned.  No one would contend that the
finding of the draft examiners, relative to the physical condition of
the plaintiff, would be binding upon the defendants, or that, if it had
been favorable to the plaintiff in this case, it could have been pre-
sented as evidence against them.  How then can it be introduced as
competent evidence in their behalf?  No sound and logical reason,
based upon the principles of evidence, can be adduced for holding
that the testimony under consideration could be received as legal
evidence for the purpose for which it was introduced.

The jury returned a verdict for the defendants upon the question
of liability, and never reached the issue of damages.  The evidence
above considered was solely upon damages.  The defendants con-
tend that, even if the evidence was incompetent, and improperly
admitted, it could not have affected the verdict.  It is undoubtedly
true that the verdict must stand unless the evidence was prejudicial
to the plaintiff upon the issue of liability.  *Beckley* v. *Alexander*, 77
N. H. 255, 257; *Morin* v. *Company*, 78 N. H. 567, 570; *Griffin* v.
*Auburn*, 59 N. H. 286; *Lisbon* v. *Lyman*, 49 N. H. 553, 583.  But as
said in *McBride* v. *Huckins*, 76 N. H. 206, 213, "it must clearly ap-
pear that the effect of the error did not extend to all the issues tried."
It cannot be said in this case that the incompetent evidence was not
prejudicial to the plaintiff upon the question of liability.  All of the
plaintiff's testimony upon this issue came from his own lips.  And
while the defendants introduced no evidence to contradict the plain-
tiff's statement relative to the accident, still the jury were not bound
to believe him, if they considered him untruthful and unworthy of
credence.

The defendants having been permitted to introduce improper tes-
timony which was well calculated to establish the untruthfulness of
the plaintiff's statement relative to the extent of his vision, the jury
may have found that he testified falsely in this respect, and have come
to the conclusion that none of his testimony was credible and worthy
of belief.  They may have applied to him the principle of the maxim
*falsus in uno, falsus in omnibus.*

If the jury did not believe the plaintiff's personal testimony giving
the cause of the accident, and describing the circumstances surround-
ing it, they would render a verdict for the defendants upon the ques-

tion of liability, because there was no other evidence upon that issue. As it is not improbable that the defendants' improper and incompetent evidence was prejudicial to the plaintiff upon the issue of liability, the verdict must be set aside.

*Exception sustained: verdict set aside: new trial granted.*

All concurred.