**MARYLAND CASUALTY CO. et al. v. OSBORN et al.**

No. 22737. Nov. 7, 1933.

Rehearing Denied Nov. 28, 1933.

H. C. Thurman and Byrne A. Bowman, for petitioners.

Wieck & Armstrong, for petitioner J. A. Haren.

Maris & Maris, for respondent Wm. F. Osborn.

SWINDALL, J. On and prior to November 22, 1927, J. A. Haren was engaged in business in Ponca City, Okla., under the trade name of Haren Tank Company. He conducted several business enterprises and carried industrial compensation insurance with the Maryland Casualty Company. One of the business enterprises covered by the policy was "carpentry not otherwise classified." The policy was carried in the trade name of the Haren Tank Company, and under his trade name he constructed wooden tanks and iron tanks and engaged in different classes of carpentry. At the time William F. Osborn claims to have received an accidental personal injury he was a floor sander or polisher, and a part of the time worked under contract at so much per job and did finishing at a certain wage per hour. He claims, and there is evidence to sustain his contention, that at the time he was injured he was doing finishing work for wages per hour in polishing the floors in a residence under course of construction for J. A. Haren. Haren, operating as the Haren Tank Company, employed a superintendent by the name of James R. Fitzgerald to superintend the erection of the dwelling house upon a commission of eight per centum of the cost of the building. Fitzgerald had a foreman on the job by the name of Robison. A part of the work of Osborn in dressing and polishing the floors was done by a power-driven machine and the work around the edges and in the corners and some of the finishing work was done by hand. There were boards temporarily nailed on the steps of the stairway leading from the first to the second floor to keep the same from being scarred by the workmen before the same were painted and polished. Osborn in moving his machine down the stairway pulled one of these boards loose and the same tripped him and he fell several feet landing on his head and left shoulder. He was a man 60 years of age and weighed about 200 pounds. Fitzgerald, superintendent on the job for Haren Tank Company, was informed of the accident in

a few minutes after the same occurred, and he had actual notice of the time, place, and cause of the injury and as much information about the nature thereof as the employee could have imparted by written notice mailed to the Commission and employer within 30 days after the injury. Fitzgerald testified that he pleaded with Osborn to go with him to a doctor, but that Osborn refused, stating that there was nothing serious the matter with him as a result of said fall. Osborn denied that he refused to go with Fitzgerald to see a doctor, but admits he did not call a doctor until he had a stroke of paralysis about January 12, 1928, following the accident. He claims, however, that on the date of the injury he had dull pains like the toothache in the vertebrae and in the big lump in the back of his neck, soreness through his neck and left shoulder, and a bad bruise on the left leg and at times sharp pains in his shoulder, neck, and vertebrae. He received a stroke of paralysis in the left arm and left side and leg about January 12, 1928, and has since been paralyzed in those regions and part of his body, and is, therefore, permanently and totally disabled from performing any kind of labor. The physician who first treated claimant departed this life before the claim for compensation was filed. Claimant did not give to the State Industrial Commission and his employer notice in writing as required by section 13358, O. S. 1931, and did not give such notice in writing to the Commission or his employer until he filed his claim for compensation on the 17th day of October, 1928, and he did not request medical attention or hospitalization or compensation at any time prior to October 17, 1928, and the employer did not voluntarily pay compensation, and so far as the record discloses did not have any notice of the injury other than the actual notice to the superintendent in charge of the work until the claim for compensation was filed.

This case was before this court in Maryland Casualty Co. v. Osborn, 147 Okla. 293, 296 P. 755. Upon consideration of the petition to review at that time, we vacated the award and remanded the cause for further proceedings for the reason that there were several respondents before the Commission and an award was entered against Fitzgerald and the Maryland Casualty Company, which company was not Fitzgerald's insurance carrier, and the cause was remanded for the further consideration by the Commission consistently with the opinion in that case, and no other issue was determined by the court.

As we view the record in this case, it appears to us that every issue involves a question of fact, so we set out the finding of fact by the Commission upon which it entered its last award, as follows:

"Now, on this 21st day of July, 1931, the State Industrial Commission being regularly in session this cause comes on for consideration pursuant to hearings held in Ponca City, Okla., before Commissioner L. B. Kyle, on January 29, 1929, and before Chairman Thos. H. Doyle, October 30, 1929, and also before Chairman Thos. H. Doyle, December 19, 1929, and at which hearing the claimant appeared in person and by his attorneys, Maris & Maris, and the respondent and insurance carrier appeared by J. D. Casey, and also as a hearing before Chairman Thos. H. Doyle, at Ponca City, Okla., May 9, 1931, at which hearing the claimant appeared by Maris & Maris, and the respondent J. A. Haren appeared in person, and the Haren Tank Company and the respondent J. A. Haren appeared in person, and the Haren Tank Company and the Maryland Casualty Company appeared by Byrne A. Bowman, and the Commission after reviewing the testimony taken at said hearings, and having reviewed all the depositions filed herein, save and except the depositions of J A. Haren, taken at Ponca City, Okla., by the claimant on the 17th day of April, 1931, which the claimant does not offer, and the reports on file and being otherwise well and sufficiently advised in the premises finds the following facts:

"(1) That on and prior to November 22, 1927, claimant William F. Osborn was employed by the respondent J. A. Haren, and engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law.

"(2) That the respondent James R. Fitzgerald was an employee and superintendent of the respondent J. A. Haren in charge of the work and was not a contractor or otherwise interested in the work being done by said J A. Haren, and in which the claimant William F. Osborn was injured.

"(3) That in the course of and arising out of his employment, said claimant, on the 22nd day of November, 1927, sustained an accidental personal injury, by stepping on a loose board on a stairway, which caused him to fall, which resulted in an injury to the claimant's vertebrae and left shoulder.

"(4.) That by reason of the said accidental injury said claimant is now permanently and totally disabled and has been since said accidental injury.

"(5) That the average wage of said claimant at the time of said accidental injury was $9 per day.

"(6) That the claimant has not been paid any compensation under the Workmen's Compensation Law since the date of said accident.

"(7) That under date of March 8th, 1926, the Maryland Casualty Company, the insurance carrier herein, issued its insurance policy under the Workmen's Compensation Law of this state, insuring the Haren Tank Company, an individual, and that said individual was the respondent J. A. Haren; that in said insurance policy the insurer covered all the liability of the employer, the Haren Tank Company or J. A. Haren, for compensation to employees of the said Haren Tank Company or J. A. Haren, as prescribed by the Workmen's Compensation Act; that among said employees covered by said policy was those engaged in carpentry, not otherwise classified; that at the time of the commencement of the construction of the house at 116 Glenside Avenue, Acres Homes addition to Ponca City, Okla., during the fall of 1927, and prior to November 22, 1927, the said J. A. Haren inquired of T. B. Carson, the local agent of the Maryland Casualty Company of Ponca City, Okla., whether it would be necessary to have an additional policy to protect him from any liability from workmen that might be injured in the construction of said house; that said Carson immediately submitted the said question to T. E. Braniff & Co., of Oklahoma City, who were then the general agents of the Maryland Casualty Company, and was informed by said T. E. Braniff & Co., that it was unnecessary to write another policy, and that the policy then in force would protect the workmen engaged in the construction of said house and would protect J. A. Haren against liability, and that there was no need in writing an additional policy; that said information was immediately communicated to said J. A. Haren. That thereafter the claimant was injured as above stated while working upon said house.

"(8) The Commission finds that among the records and files of this case various and sundry motions have been filed by the Haren Tank Company and by the Maryland Casualty Company, having for their purpose a continuance of the case for the purpose of taking further testimony, and to dismiss this action. The Commission finds that ample time has now passed for the taking of all the testimony to be taken and that much of the testimony sought to be taken, as stated in such motions, has been taken and that it is unfair to the claimant longer to delay this case; that the time that has elapsed since the filing of such motions asking for such time has been ample and such that much of the testimony sought to be taken in said motions has been taken, and that in so far as said motions, including the motions to dismiss this action still on file are undisposed of, the same be and are overruled."

Upon a consideration of the foregoing findings of fact by the Commission, it entered an award in favor of the claimant for compensation at the rate of $18 per week for a period not to exceed 500 weeks, and to review this award the insurance carrier and the Haren Tank Company have commenced this original proceeding in this court.

The first proposition urged by the petitioners is that the claimant failed to give the statutory notice of his injury and the Haren Tank Company and Maryland Casualty Company are prejudiced thereby. To sustain their contention, petitioners cite Pioneer Gas Utilities Co. v. Howard, 154 Okla. 239, 7 P. (2d) 435. In that case we followed the rule announced in a number of prior decisions by this court holding that the failure to give notice of an injury for which compensation is payable under the Workmen's Compensation Law may be excused by the Commission either on the ground that notice for some sufficient reason could not have been given or on the ground that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, and that when it appears that notice has not been given as required by section 7292, C. O. S. 1921, the burden rests upon the claimant to prove by competent evidence that for some sufficient reason notice could not have been given or that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, and that where the failure to give written notice of an injury is made an issue in a proceeding for compensation under the Workmen's Compensation Law, it is the duty of the State Industrial Commission to hear the evidence offered by the parties and make a finding in accordance with the facts excusing the failure to give said notice in writing upon one or both of the grounds authorized by section 7292, supra, or refuse to excuse such failure, as the facts may warrant, and that where the failure to give written notice of an injury is made an issue in a proceeding for compensation under the Workmen's Compensation Law and the employee offers proof that the employer had actual notice of the time, place, nature, and cause of the injury and seeks to excuse failure to give written notice upon that ground and the employer denies notice and offers proof that it did not have such actual notice of the injury, the State Industrial Commission must make a finding upon that issue, and where the record shows such issue was presented to the Commission and it has failed to make a finding of fact upon the same, this court will vacate the award and remand the cause to the Commission for a finding in accordance with the facts. We do not think that the facts in the case at bar bring the same within the rule announced in that case.

for the reason that in the case now under consideration there is competent evidence to establish the fact that Mr. Fitzgerald was the superintendent in charge of the work at the time and place the claimant, Osborn, was injured, and that Clarence Robison was the foreman under Fitzgerald on the job. He testified: "I picked him up when he fell— I asked him if he was hurt, and he said it jarred him up a little; that's about all he said." R. R. Sheridan, another carpenter, testified that he came in when Clarence Robison and some of the other men were picking up Osborn and that Osborn had not lost consciousness. With reference to Osborn, he further testified: "He said he wasn't hurt very bad or something of that kind." Osborn testified that when Fitzgerald came up they talked about having the hand rail repaired; Osborn was to get some clamps and Robison would fix the rail. Osborn further testified that: "I didn't think I was hurt at that time. I just thought I was fainty and didn't have my wind." And that he went back to the job the second day after the accident and worked a while with a hand scraper and about ten days after the accident worked for R. P. Mead on Dr. Calvert's house. Fitzgerald, the superintendent, testified in response to the question: "What other conversation did you have with him at that time?" that, "I pleaded with him to go to a doctor with me, but he refused; he said it was absolutely nothing. I didn't see any scratch or any kind of a mark on him, and he said he didn't see why he should go to a doctor; he walked around in front of the." And in response to the question: "Do you remember whether or not Mr. Osborn worked for the rest of the day?" Fitzgerald answered, "Yes, I talked to Frank some time after I came in, and I said, 'Well, are you going to go to work?' He said, 'Why, sure, there is nothing wrong with me'." Fitzgerald said: "Well, are you able to go ahead, Frank? He said 'Sure.' So he got down and changed the paper, sand paper, on his machine, and started in and worked up until noon; then he came back a little late after dinner and worked a while, and then he went away, and he came back then about 5 o'clock; and I asked him why he left the job, and he said he had another job to go to." Fitzgerald also testified that on the second day he talked to Osborn about going to the doctor and that Osborn said: "Absolutely, I don't need any aid; I am all right." Fitzgerald further stated: "I asked him—I remarked several times when I would run across him, I said, 'Frank, how is the fall?' He said, 'Jimmy, there is not a thing wrong

with me; you are the one that got the damage'; when he fell down he broke my hand rail all up; he grabbed at the hand rail, the one I had temporarily up; he broke the two goosenecks on that—cost me about $18 to have that repaired; I had to have one pretty near all made over. He said, 'You are the one that got the damage,' he said, 'not me.'" In this case the superintendent in charge of the work does not deny that he had actual notice of the time, place, cause, and nature of the injury. In the case of the Pioneer Gas Utilities Co. v. Howard, supra, the foreman on the job denied having actual notice of the injury, and the manager of the company at Oklahoma City testified that he did not have any notice or knowledge of the injury. So, in that case there was a direct conflict in the evidence upon that issue. In the case at bar the question for us to determine is whether or not the actual notice to the superintendent in charge of the work was sufficient to impart to the employer and insurance carrier all of the knowledge that would have been imparted to them had he complied with the statute and given written notice within the time provided in section 7292, C. O. S. 1921, section 13358, O. S. 1931. If so, then the burden rested upon the employer and insurance carrier to prove by competent evidence that, notwithstanding such actual notice, still they were prejudiced by failure of the employee to give notice in writing to the Commission and the employer as required by statute. Graver Corporation v. Industrial Commission, 114 Okla. 141, 244 P. 438. We have carefully examined the record and fail to find where the employer and insurance carrier have satisfied this burden. There is no doubt that Osborn fell down the stairway and that he was a heavy man about 60 years old, and that he landed on his left shoulder and back near the seventh vertebra, and his condition was such as to excite the attention of the superintendent, as the superintendent urged him to go to a physician on the day of the injury and inquired of him on other occasions after that concerning his condition. There is a serious conflict in the evidence as to the date upon which this accidental injury occurred, but the Commission has found that it happened on November 22, 1927, and there being competent evidence to sustain that finding, the petitioners concede that they are bound by such finding. It appears to us that there was a duty on the superintendent, Fitzgerald, to report this injury to his employer in order that the Haren Tank Company might comply with the Workmen's Compensation Law and report the same to the Commission,

and there was a duty on Osborn to report the injury to the Commission and to the employer. Under the facts in this case, if the Commission had denied him compensation for his failure to give such notice, his neglect would have deprived him of compensation. It is indeed out of the ordinary for a man to receive an injury of this nature which he claims resulted in paralysis and a total permanent disability and for the employee to fail to claim medical attention, hospitalization, or compensation from the date he claims to have been stricken with paralysis on January 12, 1928, as a result of the accidental injury, until November 17th of that year. There is competent evidence in the record that his condition is due to apoplexy and not to the alleged accidental injury. There is also competent evidence in the record that the accidental injury was the cause of the paralysis and the permanent total disability of claimant. The Commission has considered this conflicting evidence and found that issue of fact in favor of the claimant. This they had the power and authority to do, and we are not criticising the finding, but we do desire to impress upon claimants that they should comply with the terms and provisions of the Workmen's Compensation Law if they expect the Commission to award them compensation, and that just such a course of conduct as was pursued by the claimant in this case would fully justify the Commission in finding that the condition of claimant was the result of apoplexy and not the result of the alleged accidental injury. The fact of the long delay in filing claim for compensation is of itself sufficient to create a doubt in the mind of any commission or court as to the justness of the claim, but, as said before, there is no evidence that the delay prevented the employer from making all the investigation that he could have made if the notice had been duly given, and there is no evidence to show that if medical attention had been furnished promptly the claimant could have been helped or the injury reduced. Therefore, we would not be justified in setting aside the award on the ground that the employer has been prejudiced. Where claimants, without offering a just excuse for failure to file claims until the same are almost a year old and make no effort to give written notice of the injury as required by law and seek to excuse giving notice on the grounds that the insurance carrier and employer had actual notice of the time, place, nature, and cause of the injury, the claim should be considered by the Commission with a high degree of suspicion as to the merits of the claim. This court in announcing the rule relative to actual notice followed the rule announced by the courts of last resort of other states construing similar acts upon the theory that the Workmen's Compensation Law should be liberally construed to accomplish the purposes of the act, and concluded that if the employer and insurance carrier had actual notice of all the facts the written notice was required to impart, the burden was on them to show prejudice after the employees had offered competent evidence of actual notice. The Legislature in requiring notice in writing to be given foresaw that grave injustice might result if notice soon after the injury was not required to be given in order that an investigation could be made to determine the time, place, nature, and cause of the injury, so compensation might be paid or denied as the facts warrant. This result cannot be accomplished where claims are permitted to become stale before being determined.

In support of his position the petitioner also relies upon the case of Turner v. Earl W. Baker Co., 153 Okla. 28, 4 P. (2d) 739. In some respects the facts in that case are similar to the case now under consideration, but in others the facts are materially different. In that case the claimant testified that he slipped in a ditch and fell striking his foot on some object and injured it, that the foreman was present at the time and that he and the foreman were rooming together and that the foreman helped him rub some liniment on the ankle. He claimed that he had a twisted ankle, fracture of bone, or tearing of ligament in his left foot or ankle. The employer denied actual notice to it or its foreman. The Commission denied him compensation and he commenced proceedings in this court to review. There was competent evidence in that case to show that if he had been treated shortly after the injury, there would not have been any permanent result, and we held that the Commission properly found that the employer and the insurance carrier had established by competent evidence that it would result in prejudice to them under such circumstances to allow the claimant compensation. In the case at bar, if there had been any competent evidence offered that the claimant could have been cured or his physical condition improved by medical attention, had notice been duly given, we are of the opinion that such evidence would tend to show prejudice to the rights of the employer and insurance carrier, and the Commission would have to determine that issue, but we have failed to find any such evidence in the record and our attention has not been called to such a state of facts

It is next contended that the State Industrial Commission failed to make a finding as to notice. It is not claimed that notice was given or that failure to give notice was excused, but the case was determined by the Commission upon the theory that the superintendent in charge of the work had actual notice of the time, place, cause, and nature of the injury, and that such notice to the superintendent was notice to the employer, and that under the law notice to the employer is notice to the insurance carrier, and, therefore, upon proof of actual notice the burden was upon the petitioners to show that, notwithstanding such actual notice, still the petitioners were prejudiced, and that the petitioners failed to show prejudice by competent evidence. We have carefully examined the record, and are of the opinion that the contention of the petitioners is not well taken, and the finding of the Commission upon that issue is approved.

The next contention of petitioners is that the claimant was injured while working on the residence being constructed by J. A. Haren for his own uses, and that the Maryland Casualty Company's policy only covered employees injured in the business operations of the Haren Tank Company, and the Commission erred in holding the insurance company liable. The Haren Tank Company was only a trade name of J. A. Haren, and the evidence discloses that Haren had constructed three dwellings prior to the construction of the one under construction at the time Osborn was injured and had occupied the other three dwellings a portion of the time and later disposed of the same. It is contended by the petitioners that this case is governed by the rule announced by this court in the case of Meyer & Meyer v. Davis, 162 Okla. 16, 18 P. (2d) 869. In that case we held that where an employer is engaged in a nonhazardous business and employs someone to perform labor for him of a hazardous nature as an incident to such nonhazardous business, but not in the conduct of same for pecuniary gain, such employee, if injured, does not come within the provisions of the Workmen's Compensation Act, for subsection 5 of said section 13350, O. S. 1931, provides: " 'Employment' includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain." In the case at bar the employer was engaged in a hazardous occupation coming under the terms and provisions of the Workmen's Compensation Law, and while it is true the evidence disclosed that he was constructing the house at Ponca City for a residence for his own use, he testified that all the business engaged in by the Haren Tank Company was carried on for pecuniary gain, and considering this testimony in this case in connection with the fact that he had constructed three other residences and occupied the same a portion of the time as his residence and his statement that he bulit all of the residences for pecuniary gain, and the business adventures that he was engaged in all for gain or profit, and the fact that he had changed his residence from the house under construction at the time Osborn was injured and had moved to Boerne, Tex., at the date of the last trial, it was sufficient to authorize the Commission to find from the evidence that the business of Haren in constructing the last dwelling at Ponca City was carried on for pecuniary gain and that at the time and place when the injury occurred he was engaged in the business of constructing buildings under section 13349, O. S. 1931.

The petitioners further contend that the Commission erred in closing the case over the objection of petitioners without giving them an opportunity to offer evidence at Oklahoma City and Ponca City and in disregard of their agreement with opposing counsel for the taking of depositions. Depositions were taken covering the principal mooted issues in the motion. The last motion filed by the petitioners requesting time to take depositions was on July 8, 1931, and the award was not entered until July 21, 1931, so we cannot say that the Commission abused its discretion in entering its award on the date the same was entered.

The final contention of petitioners is that the claimant was not engaged in an employment in a trade or business occupation carried on by J. A. Haren for pecuniary gain. We have considered and disposed of this contention under the third proposition.

The issues in this case were upon issues of fact, and there is competent evidence to sustain the award of the State Industrial Commission. It is the well-settled rule in this court that the findings of the State Industrial Commission, sustained by any competent evidence, are binding upon this court.

The award is, therefore, affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.