**PROTHO et al. v. NETTE et al.**

No. 26040. July 2, 1935.

Thos. H. Owen and Paul N. Lindsey, for petitioners.

O. S. Huser, for respondent and cross-petitioner Fred Nette.

Mac Q. Williamson, Atty. Gen., and Houston W. Reeves, Asst. Atty. Gen., for respondent State Industrial Commission.

PHELPS, J. This is an original action to review the order and award entered by the Industrial Commission in favor of respondent Fred Nette.

The petitioner's first proposition is that the employment in which the respondent was injured does not come under the Workmen's Compensation Act.

Nette was a marble worker employed by J. T. Protho, doing business as Holdenville Marble Company. Machinery is used inside of the marble works shop, at least to the extent of a polisher and a hoist.

Pieces of marble weighing some 450 pounds were loaded on a truck by Nette and a fellow worker, inside the shop, by means of a hoist. They then transported the marble to Weleetka, where they unloaded it and constructed a cemetery fence and coping with it. When Nette and the other employee were lifting one of these pieces of marble from the truck, and carrying it to be placed in the fence and there cemented, his left arm and hand gave way and became numb. That night he was stricken with paralysis of the left side, which became permanent and total. Said paralysis was caused by the unusual strain of lifting, resulting in the breaking of a blood vessel or artery, which would not have broken but for his pre-existing high blood pressure.

One of the particular employments enumerated in section 13349, O. S. 1931, prescribing the hazardous employments to which the Workmen's Compensation Act is applicable is "work shops where machinery is used." Another is "construction and engineering works." It is unnecessary to emphasize the plain applicability of the act to the employment involved.

Nor does the fact that the injury was sustained at some place other than upon the employer's premises take it from the operation of the act, since the employee in the course of his duties was required to be at said other place at the time of the injury. Fort Smith Aircraft Co. v. State Industrial Commission, 151 Okla. 67, 1 P. (2d) 682.

Further, on the basis of section 13361, O. O. 1931 (7295, C. O. S. 1921), providing that in the absence of substantial evidence to the contrary it shall be presumed that the claim comes within the provisions of the act, we held in Bishop et al. v. Wilson et al., 147 Okla. 224, 296 P. 438, that this section compels the Commission and this court to presume that the business conducted by the employer is within the provisions of the statute in the absence of some substantial evidence to the contrary. In the record before us there is no such evidence rebutting the presumption.

The petitioner next complains that the Commission's order and award are invalid because the Commission did not excuse the failure to give notice, either on the ground that notice could not have been given, or that the employer and insurance carrier were not prejudiced, and made no finding at all with regard to the issue of lack of notice.

Petitioner cites Greer County Gins et al. v. Dunnington, 166 Okla. 302, 27 P. (2d) 630. wherein we held, under section 13358, O. S. 1931 (requiring the injured employee to give notice of said injury to the employer and State Industrial Commission within 30 days):

"When the failure to give such notice is made an issue by the pleadings, and evidence is given with relation to such issue, it is the duty of the State Industrial Commission to make a specific finding upon such issue in order that this court on appeal may know what it intended to find with reference thereto and to judge the record accordingly."

But it is apparent from a reading of the foregoing case that there was a conflict of evidence as to whether there was actual notice, and if there was, then whether the failure to give the statutory written notice prejudiced the employer or insurance carrier. In Oklahoma there is a clear distinction between such a case and a case wherein the evidence on those material issues is undisputed. The case of Greer County Gins v. Dunnington, supra, was based upon Pioneer Gas Utilities Co. v. Howard, 154 Okla. 239, 7 P. (2d) 435. But we have also held that the rule announced in the latter case, Pioneer Gas Utilities Co. v. Howard, is not applicable where it is undisputed that the employer had actual notice and the failure to give written notice is not shown to have prejudiced said employer or insurance carrier; this ruling was made in the case of Maryland Casualty Co. v. Osborn, 166 Okla. 235, 26 P. (2d) 934. In that case it was held: (1) Where the employee fails to give the written notice, but offers competent evidence of the employer's having received actual notice, the burden is then placed upon the employer or the insurance carrier to offer competent evidence tending to prove that, notwithstanding such actual notice, they were prejudiced by failure to give the written notice; (2) where the evidence of the employee as to the giving of actual notice is undisputed, and where there is no showing by the employer or insurance carrier that they were prejudiced by the failure to give written notice, the case is not one to be remanded to the Commission for failure to make a finding as to notice. Thus there is no conflict between Maryland Casualty Co. v. Osborn, supra, and Pioneer Gas Utilities Co. v. Howard, supra. And since Greer County Gins v. Dunnington (cited by petitioner) simply follows Pioneer Gas Utilities Co. v. Howard, without extending it, the present case, on account of the facts recited below, comes within the classification of Maryland Casualty Co. v. Osborn, supra.

The case law in this jurisdiction seems to be: (1) Where the evidence showing actual notice on the part of the employee is undisputed, and the employer offers no proof that he was prejudiced by the failure to give written notice, then no finding on the question of notice by the Commission is necessary (Maryland Casualty Co. v. Osborn, supra; (2) but where actual notice is denied or there is testimony that the employer has been prejudiced by the failure to give the written notice required by the statute, notwithstanding the actual notice, then a finding on the question of notice by the Commission is necessary (Greer County Gins v.

Dunnington, supra; Pioneer Gas Utilities Co. v. Howard, supra).

In the present case it was conclusively established by the employee that the employer received actual notice of the injury within less than 24 hours after its occurrence. The employer obtained an ambulance for the employee and had him transported to a hospital. The employer's "First Notice of Injury," being form 2, provided by the Commission, which was signed by the employer, stated that he provided medical attendance immediately after the accident. Further, the foreman knew of the accident immediately. Notice to the foreman is notice to the employer, and notice to the employer is notice to the insurance carrier. Maryland Casualty Co. v. Osborn, supra.

There are portions of the record indicating that the injured employee did not personally tell the employer of the injury immediately after its occurrence, but this is not a contradiction of the employer's own testimony that he in fact did receive notice thereof though from the mouths of persons other than the injured man himself.

Under the rules above announced, the fact of actual notice not being denied by any competent evidence, it was incumbent upon the employer or insurance carrier to offer some evidence of prejudice by reason of the failure to receive written notice. This they totally failed to do. It is not even argued in the petitioner's brief that they were prejudiced by said failure to give written notice. Nor has the petitioner cited any authority to the effect that, if there is actual notice, the failure to give written notice imputes prejudice per se. Hence, we conclude that the failure of the Commission to make a finding on the question of notice is unnecessary in this particular case in order for us to review that question.

The third proposition urged by petitioner is: "There is no evidence to support the finding that 50 per cent. of the disability of the claimant is due to an accidental personal injury." The claimant filed an answer and cross-petition in this cause wherein he also complains that it was error for the Commission to hold that 50 per cent. of his disability is due to a pre-existing condition and 50 per cent. due to the injury. We therefore consider the petitioner's third proposition and the proposition of the respondent (claimant) together.

The evidence reveals that the respondent is permanently and totally disabled. This is admitted by petitioner. On the one hand, the petitioner contends that, since the employee was shown to have been given a disability rating of 75 per cent. when examined on March 12, 1932, upon his application for a disability allowance by the Veterans Bureau, a finding by the Commission of any percentage of present compensable disability in excess of 25 per cent. is not supported by the record. This contention is based upon the testimony of F. D. Quinn, of the U. S. Veterans Bureau, who spoke from an investigation of the government record reflecting that Nette's disability had been estimated on May 5, 1932, about a year before the accident, as 75 per cent. The record was not introduced.

In announcing the basic facts in this case, we do not take into consideration, as competent evidence, said statement as to the purely administrative rating of the Veterans Bureau, made practically a year prior to the date of the injury. It was not sought to be used in this hearing as matter of impeachment, but was offered and apparently accepted as evidence of pre-existing disability. This evidence appears to us to be purely hearsay. The opportunity of cross-examination of whoever made the rating was wholly lacking. The rating was made for a different purpose and under different standards than those involved in the present case. See Laird v. B. & M. Ry. (N. H.) 114 Atl. 275, 16 A. L. R. 243. It certainly bears no relationship to, nor can it be considered of any probative value against, the undisputed fact of respondent having satisfactorily performed the work in which he was engaged when injured, for a period of approximately five years preceding the injury.

On the other hand, the respondent urges that if he is entitled to anything, it is the usual full compensation based on total permanent disability, and that there was no competent evidence or rule of law to support the Commission's order fixing his compensation at 50 per cent. of that customarily awarded in total permanent disability cases.

The respondent having raised this question by proper method of appeal, it is of course our duty to rule thereon as thoroughly as if he had been the original petitioner. We are inclined to agree with his contention, for two reasons: First, there is no evidence whatever to support the finding that "50 per cent. of his disability is due to a pre-existing condition and 50 per cent. due to this injury"; and second, even though

118

it be assumed that 50 per cent. of his disability is due to the pre-existing condition, under the law he is nevertheless entitled to the full compensation provided for total permanent disability instead of just half thereof.

We observe that the Commission did not find that the claimant had a 50 per cent. disability prior to the accident; what the Commission did find is that his pre-existing condition was responsible for 50 per cent. of his present paralysis. Nor would there have been justified a finding that he was 50 per cent. disabled prior to the accident. Aside from the Veterans Bureau rating, there was no evidence of disability prior to the accident, other than the following testimony of the physician who examined him for the Veterans Bureau:

"Q. What percentage of disability, Doctor, would you consider Mr. Nette at the time you examined him for the Veteran's Bureau? A. I don't know. I believe he got $18, that would be 50 per cent. Q. It is your opinion that he was about 50 per· cent. disabled when he was injured out there? A. That was the Veterans rating—we just put down the findings and then the rating bureau fixed the rating. Q. He wasn't, when you examined him for the Veteran's Bureau, an abled-bodied man? A. No, sir. Q. He had some disability? A. Yes, sir."

It is very apparent from the foregoing that while the witness testified that respondent had some disability, he obviously declined giving it as his opinion that the disability was 50 per cent. The petitioner itself attacks this testimony and points out its insufficiency as evidence of "only 50 per cent." disability. Of course, if this testimony was insufficient, as petitioner says, to prove a disability of "only" 50 per cent., it was by the same token insufficient to prove any particular percentage of disability. There was only "some" disability.

But it is undisputed that for years prior to the accident he worked as any other able-bodied man, hence, in spite of the latent danger by reason of the high blood pressure, he performed his duties and earned his pay by the same manner of satisfactory work as that of any other employee.

There was no evidence affording a means or method of either accurately or inaccurately determining in just what degree or per cent. the paralysis was attributable to the high blood pressure, and what degree or per cent. to the accident. It is doubtful if such a thing could be determined. Having no evidence on that issue, the Commission

simply switched over to the convenient standard of relative disability before the injury and after the injury. (And, in doing so, the Commission arbitrarily assessed a pre-injury "disability" of 50 per cent., when there was no more competent evidence of a 50 per cent. disability than there was of a 70, 10, or 2 per cent. disability.)

Whether subdivision 6 of section 13356, O. S. 1931, was intended to govern cases wherein an accident aggravates dormant disease into an injury causing loss of earning capacity need not here be decided, for it so happens that it is harmonious with the prevailing rule on that subject. It reads:

"Previous Disability: The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury."

Thus in computing the award, if the claimant is entitled to any award at all, there is only one important question: "What sum will reasonably represent his earning capacity at the time of the 'later' injury?" The earning capacity is the thing, regardless of whether it be subnormal in amount on account of his pre-acquired weakness, or normal in spite of said weakness. The predisposition to disability, in other words, the likelihood of becoming suddenly stricken with heart failure, paralysis, and such afflictions, is often not accompanied by any apparent lowering of physical ability until immediately beforehand. Until the hour that it strikes, the victim's earning power may remain normal, in spite of the fact that he was a worse "risk" to the employer than if he had been sound. Until that time his earning capacity was nevertheless his earning capacity, though the risk in having him on the pay roll was greater. But the statute rightfully makes earning capacity the only criterion, partly because it would be impossible to provide a scale of compensation based on the comparative resistance to injury between weak or diseased men and healthy men. Yet the award in the instant case disregards the plain basis of compensation provided by the law, subtracting from the proper award that proportion thereof which would be represented by the man's relative degree of susceptibility to injury, regardless of his actual earning capacity.

The petitioner states that "This court has held repeatedly that the claimant, who is

suffering from disease, can only recover compensation for that part of his disability caused by the injury, and the Commission must make a finding as to that part due to injury and to disease," and cites Noel v. Potts, 157 Okla. 136, 11 P. (2d) 137, Shoenfield & Hunter D. Co. v. Combs, 167 Okla. 397, 30 P. (2d) 162; Washita County Gin Co. v. Colbert, 162 Okla. 276, 19 P. (2d) 1080, and Conlin Co. v. Guckian, 173 Okla. 193, 21 P. (2d) 740. The true rule is that where an accidental injury aggravates a pre-existing disease or physical condition into a state of disability, the injured employee is nevertheless entitled to the full benefits of the act, computed on the basis of his actual earning capacity at the time of the accident, and that rule has been followed by this court in the great majority of its decisions on this question, and some of those cases are Magnolia Petroleum Co. v. Snapp, 149 Okla. 51, 299 P. 137; Fitzsimmons v. State Industrial Comm., 108 Okla. 276, 236 P. 616; Sanders v. Rock Island Coal Mining Co., 138 Okla. 45, 280 P. 290; Richards v. State Industrial Comm., 143 Okla. 29, 287 P. 69; Northwestern Refinery Co. v. State Industrial Comm., 145 Okla. 72, 291 P. 533; Christian v. Hanna, 144 Okla. 89, 289 P. 708; Employers' Liability Assurance Corp. v. Coffman, 147 Okla. 227, 296 P. 395; Shell Petroleum Corp. v. Moore, 147 Okla. 243, 296 P. 390; Superior Smokeless Coal & Mining Co. v. Shamblin, 148 Okla. 193, 298 P. 247; O. G. & E. Co. v. Slocum, 159 Okla. 245, 15 P. (2d) 29; Eagle Picher Mining & Smelting Co. v. Murphy, 169 Okla. 180, 35 P. (2d) 952; Deep Rock Oil Corp. v. Betchan, 169 Okla. 42, 35 P. (2d) 905.

We think that clearly there was confusion in this case between an imagined pre-existing disability and a pre-existing state of health, making it hazardous to engage in the occupation. In other words, while it is evident that it was hazardous for Nette, being afflicted with high blood pressure, to engage in this employment, it is axiomatic that this had nothing to do with that earning capacity which he did in fact possess and use and upon which basis he was paid. From the testimony of the expert witnesses, including that of the petitioner, one necessarily gathers the conclusion that the unusual strain resulting from the heavy lifting which Nette and his fellow worker were doing (referred to by witnesses as lifting which ordinarily it would require three men to perform) was the direct, immediate, inciting cause of the paralysis. This point does not seem to be disputed. And although the ailment would possibly at some future time have caused the paralysis, regardless of whether respondent continued in this line of work, it is uncertain how far postponed that event would be; there is as much reason to believe that it would be postponed to a time in excess of the maximum period for which compensation is payable as there is to believe that it would have taken place at some date in the immediate future. In such cases, the possible future date of disability if the employee should remain idle being merely speculation, the courts quite uniformly hold that such physical ailments as high blood pressure, Bright's disease, heart disease, and arthritis do not prevent application of the Workmen's Compensation Law if the accidental injury is the immediate, inciting cause of the disability, and even if the particular injury would not have disabled the employee without the accompanying pre-existent disease.

It is recognized that most men have lurking in them the germs of some disease, or are deficient in some one or more of the many physical systems and functionings of the human body, and since the basis of the compensation under such law is not that of physical ability, but is that of actual earning capacity, the existence of disease or of predisposition to disability is not material. The earning capacity of an individual who, due to some latent defect, may be subject to a stroke at any time without warning, may in many cases exceed that of another worker who is physically perfect.

The rule that in such cases, if the immediate, inciting cause is the injury, the disease does not prevent the Workmen's Compensation Law from applying, is analogous to and in harmony with fundamental principles elsewhere contained in the law, particularly the law of inciting proximate cause in torts.

It is apparent that the Commission, having arrived at the conclusion that "50 per cent. of his disability is due to a pre-existing condition and 50 per cent. due to this injury," consequently based the amount of the award on the theory that only 50 per cent. of the amount ordinarily awarded could be recovered by the respondent. Even if the finding that 50 per cent. of the present disability is attributable to the pre-existing condition could be justified by the evidence, which it cannot, still the basis of compensation was erroneous. In Nease v. Hughes

Stone Co. et al., 114 Okla. 170, 244 P. 778, we held that:

"'Total disability,' as used in the Workmen's Compensation Law of this state, takes no account of a state of partial disability or impaired health existing in the claimant previous to the happening of the accident claimed to have caused such total disability. * * * He was presumably paid the wages which a man in that impaired condition' was worth in that service. When by the last injury Nease lost all that remained of his normal capacity, after the prior injury, he fell within the class designated by the statute as 'permanent total disability,' and was entitled to receive compensation allowed for that class. * * * Nease's weekly wages were doubtless reduced accordingly, so that at the time of his last injury he was receiving as wages only such wages as he was entitled to, owing to his impaired capacity when he entered the service of his employer. He had that degree of capacity which enabled him to work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man possessing all of his faculties. But, nevertheless, it was the employee's capacity, and it enabled him to earn the wages which he received, and his compensation is fixed and based on that capacity and ability to earn wages. And, that capacity being totally destroyed, he was entitled to an award for permanent total disability, and the Industrial Commission erred in not so holding."

In Northwestern Refining Co. v. State Industrial Commission, 145 Okla. 72, 291 P. 533, it was admitted that the employee was afflicted with a pre-existing nervous condition resulting from hardening of the arteries. While he was on a ladder in the discharge of his duty an explosion occurred in the plant, from which he became frightened and jumped off the ladder of his own volition. If the explosion had not occurred he would not have jumped. Neither, except for the disease, would he have jumped. This court held that an award granting him compensation for permanent total disability was proper, notwithstanding the pre-existing nervous condition; also it was stated that the accident precipitated and hurried the breaking down, and that if it had not been for the accident, the claimant might have been able to carry on for several years. We do not perceive any distinction between that case and the present one.

The following language is helpful from Employers' Liability Assurance Corp. v. Coffman et al., 147 Okla. 227, 296 P. 395:

"While it appears that respondent has been affected with tuberculosis, yet the evidence justifies the finding that the immediate cause of disability was the injury, and the disability resulted therefrom; that the respondent was diseased at the time of the injury cannot be denied, but such disease had not progressed to the point of disability. He was with substantial regularity performing the duties of his employment up until the time of his injury. If the disease was thereby accelerated so as to produce disability so soon after the injury, the injury must be regarded as the cause of the disability."

It was held in Shell Petroleum Corp. et al. v. Moore et al., 147 Okla.. 243, 296 P. 390, where respondent, having a pre-existing arthritic condition of the back which at some uncertain and undetermined time in the future might cause him to become totally incapacitated, was injured by a heavy piece of lumber falling upon him, resulting in immediate temporary total disability, that he was entitled to full compensation for said temporary total disability, notwithstanding the pre-existing condition. To the same effect are all of the companion cases, above listed, of Fitzsimmons v. State Industrial Commission et al., 108 Okla. 276, 236 P. 616, and Mid-Kansas Oil & Gas Co. v. State Industrial Commission et al., 165 Okla. 15, 22 P. (2d) 919. In the latter case it was also observed that "compensation benefits are not limited to perfectly healthy workmen."

On the whole, we reiterate that in the first place there was no competent evidence justifying either a finding of a pre-existing 50 per cent. disability, or that "50 per cent." of his present disability is due to a pre-existing condition; and in the second place, even if either or both of said assumptions were true, nevertheless, for the reasons given in the cases cited, the claimant was entitled to full compensation on the basis of his actual earning capacity prior to the paralytic stroke.

It is therefore the judgment of this court that the order is affirmed in all particulars except that portion thereof awarding the respondent only 50 per cent. compensation, and said cause is remanded to the State Industrial Commission to enter its order awarding the respondent, Fred Nette, total and permanent disability compensation for a period of time not to exceed 500 weeks, or in the proper lump sum, less any payments thereon which may have heretofore been made to said respondent.

McNEILL, C. J., and BAYLESS and CORN, JJ., concur; and OSBORN, V. C. J., and RILEY, BUSBY, WELCH, and GIBSON, JJ., concur in conclusion.