POWELL v. STATE INDUSTRIAL COMMISSION et al.

No. 35690. March 31, 1953.

*255 P. 2d 493.*

Robert B. Harbison, Altus, for petitioner.

A. R. Daugherty and Fenton & Fenton, Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, J. Tom Powell, claimant, filed his first notice of injury and claim for compensation, stating that on October 23, 1948, while operating a tie press, commonly called a dinkey and hereinafter called a press, the press exploded and he sustained an acciden-

tal injury when a board struck his toes. The trial commissioner after several hearings entered an award for permanent disability to the body as a whole. On appeal to the commission en banc the award was vacated and an order entered denying an award. This proceeding is brought to review the final order of the State Industrial Commission.

Claimant testified that he was on the east side of the press. This press is used to break the bands or ties on bales of cotton so that they can be compressed. The press operates by steam; the steam cylinder used in the operation exploded and his hand was caught in the tie of a bale of cotton. A fellow employee and the foreman, Hogan, cut his hand loose from the bale of cotton. Claimant testified that when the press exploded it threw a board approximately two feet longer that the press across and over his feet striking the toes of both feet. An employee, William Fields, also testified that when he reached claimant, the board was on claimant's feet, and that he, Fields, removed the board from his feet.

Willie Lee Harris, an employee at the press at the time it exploded, testified that claimant's hand was caught in the bale of cotton when he arrived on the side of the press where claimant was working. Harris did not testify that any board or other object struck claimant's feet. The only other witness at the scene of the accident was Percy Thomas. He was on the west side of the press loading the press. He was going toward the press when the accident happened. When he saw claimant, claimant was in the press and a tie or band on the bale of cotton was holding his arm and his body was lying "kind of" against the bale of cotton. The board, referring to the board claimant said struck his feet, had blown around and claimant was standing "kind of" on the board. This board was placed over a depression underneath the press.

William W. Hogan, foreman of Traders Compress Company, testified that he was attracted by the noise made by the explosion and hurried over to the scene of the accident. Claimant's arm was caught in the band on the bale of cotton at the wrist. When Hogan reached the scene of the accident the bale of cotton was still in the press. Field was there when Hogan arrived. At the direction of Hogan, Field got the cutters and cut the bale thus freeing claimant's hand from the tie. Hogan took Willie Lee Harris and claimant to the superintendent, Voorhies, who took both Harris and claimant to the office of Dr. Reed, the company physician.

Claimant testified that Dr. Reed treated his hand for a slight injury and that claimant requested that he look at his feet, but that Voorhies, the superintendent, stated there was nothing wrong with claimant's feet and that they returned almost immediately to the compress where claimant resumed his work. He also testified that his feet became so infected that he was forced to quit work on December 8, 1948. Thereafter, he was operated by Dr. Ensey.

There was no attempt to establish at the trial any injury to the hand. It completely healed after the treatment by Dr. Reed. All the controversy arises as to the disability to the feet.

Dr. Ensey testified for claimant. He first saw claimant May 26, 1949, and treated him thereafter until he operated him on October 12, 1949, and his ultimate release thereafter. He explained in detail his reasons for believing the disability resulted from an injury which infected his toes. The left foot was taken off by an operation referred to as "lesflank". According to the testimony of Dr. Ensey claimant has a permanent disability resulting from this injury.

Dr. Becker was the anesthetist at the operation performed by Dr. Ensey and supported the theory that the accidental injury occasioned the disability.

Dr. Raymond H. Fox, physician and surgeon of Altus, Oklahoma, testified that he first saw Thomas Powell December 11, 1948. Thomas Powell had quit work on December 8, 1948, and testified that he quit work because his toes became so infected he was unable to stand on his feet. Dr. Fox treated him from December 11, 1948, until February 3, 1949. He stated that claimant had a circulatory disturbance and was not getting enough blood in his feet, that the tissue was rotting out; that he diagnosed the disease as Buerger's disease. He testified that he cleaned out the infection in the toes and the feet would heal and then break down; that the condition of claimant was chronic and witness was also of the opinion that it was of long standing; that claimant at first gave no history of trauma but after a month or so he began talking about an accident he has sustained at the compress. Before this claimant had given no history of any injury to his toes or his feet; that witness found no condition in his treatment of claimant which would indicate that any of his difficulty was due to trauma; that he found no fracture of the toes; that in his opinion claimant was suffering from Buerger's disease alone and concluded that claimant's disability was not due to the accidental injury of October 28, 1948.

Dr. John R. Reed testified that he treated claimant on October 23, 1948, and October 24th thereafter, for a bruised and injured arm, the history being that a press blew up or a spring gave way and caught claimant's arm; that at the time claimant made no complaint about his feet and made no claim that he had injured his feet. He further testified he had examined claimant a week before his testimony and found the condition described by Dr. Ensey in his testimony after the operation on the feet; that he diagnosed the condition as Buerger's disease. He gave it as his conclusion that the disability of claimant was not due to the accidental injury of October 23, 1948, or to any other injury, but was due to the diseased condition of his feet.

It is first contended that the order denying the award is not sustained by any competent evidence. Claimant cites Protho v. Nette, 173 Okla. 114, 46 P. 2d 942, and related cases. These cases are authority for the rule that where there is no competent evidence to sustain an order either making or denying an award this court will vacate the order or award for that reason.

This court has repeatedly held that whether a disability results from an accidental injury or disease or other causes is a question of fact, and if there is any competent evidence reasonably tending to support the order made by the State Industrial Commission thereon, it will not be disturbed on review. Johnson v. Ben Franklin Ref. Co., 194 Okla. 347, 151 P. 2d 428; Banning v. Peru-Laclede Syn., 179 Okla. 382, 65 P. 2d 976; Hollis v. Mid-Continent Pet. Corp., 174 Okla. 544, 51 P. 2d 498; Souder v. Mid-Continent Pet. Corp., 187 Okla. 698, 105 P. 2d 750. See, also, Nelson v. Carter Oil Co., 195 Okla. 317, 157 P. 2d 163. In Hollis v. Mid-Continent Pet. Corp., supra, we said:

"It therefore appears that from the testimony, the nature of which has been many times approved by this court, submitted to the commission by competent physicians, they choose to adopt as their finding of fact those in support of the respondent. Under the above authorities, it is neither the province nor the duty of this court to interfere with the order of the commission based thereon."

By a review of the above testimony, it may be seen that it is in irreconcilable conflict. There is competent evidence sustaining the finding of the State Industrial Commission that the disability was not due to the accidental injury of October 23, 1948.

In a final proposition it is argued that the order is indefinite, uncertain and should be sent back to the Industrial Commission for further findings

under the doctrine announced in Corzine v. Traders Compress, 196 Okla. 259, 164 P. 2d 625; Adams v. City of Anadarko, 198 Okla. 484, 180 P. 159, and related cases. We do not agree. The finding is as follows:

"That on or about the 23rd day of October, 1948, claimant was in the employ of respondent herein, engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and on said date claimant sustained an accidental personal injury, arising out of and in the course of his employment with respondent, consisting of an injury to his right arm.

"That at the time of said injury, claimant's compensation rate, based on his average earnings, was $24.00 per week. That claimant lost no compensable time from work by reason of his right arm injury.

"That claimant sustained no permanent disability to his right arm by reason of his injury of October 23, 1948; and therefore, claimant's claim for compensation herein should be denied.

"That claimant did not sustain an accidental personal injury to his feet on October 23, 1948; and the permanent disability that claimant now has to his feet existing at this time is as a result of the Burger's (sic) disease and not as a result of an accidental personal injury; and therefore, claimant's claim for compensation herein should be denied."

The above-quoted portion of the order reflects that it was the intention to find that the disability did not result from any accidental injury sustained by claimant but was the result of Buerger's disease alone.

In Banning v. Peru-Laclede Syndicate, Inc., supra, p. 384, 179 Okla. Reports, at page 979, 65 P. 2d, we said:

"* * * While the commission could have more properly said that upon review of all of the evidence they had found that claimant had failed to prove any disability resulting from his accident of May, 1934, we are of the opinion that the meaning and intent of the finding and order clearly results in a determination of the issue of fact from a consideration of all the evidence, although the phraseology indicates the sustaining of a demurrer. We conclude that the commission intended to and did say that the claimant had wholly failed in his proof to establish his claim of disability; that they chose to believe the evidence before them which tended to establish the fact that claimant had never sustained any permanent injury as a result of the accident of May 17, 1934, and therefore he was not entitled to an award of compensation. * * *"

Order denying the award is sustained.

HALLEY, C.J., JOHNSON, V.C.J., and WELCH, CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.